MILO ELECTRIC LIGHT AND POWER CO., et als.

*vs.*

SEBEC DAM COMPANY.

Piscataquis.    Opinion November 6, 1912.

*Charter.    Constitution.    Corporations.    Dam.    Gates.    Injunction.    Log-driving.    Mills.    Property Rights.    Sufficient Water.    Vested Rights.*

Defendant corporation was incorporated by c. 130, Priv. and Sp. Laws of 1866 and authorized to raise an existing dam at the outlet of Sebec Lake to a height to enable it "to obtain a sufficient head of water to drive logs and run the mills on Sebec River" and to collect tolls for logs driven. The act of incorporation was amended by c. 141, Priv. and Sp. Laws of 1903 and c. 339, Priv. and Sp. Laws of 1905. The latter provided that, whenever from the first day of March to the first day of July in each year the waters of Sebec Lake shall be needed for log driving and manufacturing purposes or at any time for manufacturing including power purposes on the several privileges of Sebec River, the gates of the dam shall be hoisted to the extent required to allow the escape of sufficient water therefor.

*Held:* that, the gates are not required to be raised to furnish water to float logs as needed for use in a mill located upon the river below the dam;

That, "sufficient water" is not merely the natural flow of the river;

That, "the mills on Sebec River" does not refer alone to those upon the dam of defendant but also to those upon privileges below the dam and not only to the mills then on the privileges below the dam but to such mills as might, in the development of industries, be located on those

privileges, provided the requirement for power be not in excess of the ability of the river to furnish when managed reasonably in the usual manner or in accordance with rights acquired by prescription, if any such exist;

That, the Legislature used the term "sufficient water" in the sense of sufficient water having due regard to the right of others "having property rights affected or which may be affected;" and

That, the act of 1905 is not unconstitutional but within the power reserved to the Legislature, of amendment, alteration or repeal of acts of incorporation.

On report. Decree may be entered and injunction granted by sitting Justice in accordance with opinion. Bill dismissed as to complainant, American Thread Company.

This is a bill in equity in which the plaintiffs seek an injunction restraining the Sebec Dam Company from holding water in Sebec Lake, contrary to its right and its charter. The defendant filed an answer and the plaintiffs filed the usual replication. The cause was then heard before the Justice of the first instance on bill, answer and evidence, and at the conclusion of the evidence, the cause was reported to the Law Court under the following stipulations. Questions of law having arisen of sufficient importance, or doubt, to justify the same, and the parties agreeing thereto, this cause is reported to the Law Court for decision. Upon so much of the evidence as is legally admissible the Law Court is to render such judgment as the legal rights of the parties may require.

The case is stated in the opinion.

*J. B. & F. C. Peaks, and Guernsey & Hale,* for plaintiffs.

*Hudson & Hudson,* for defendant.

SITTING: SPEAR, CORNISH, KING, BIRD, HALEY, JJ.

BIRD, J. Prior to the year 1866 John Morrison and two associates had erected a dam at the outlet of Sebec lake to provide water power for the operation of their mills located at or near the outlet. Neither the height not date of erection of this dam is shown by the record. In the year 1866, Morrison and his two associates were incorporated as the Sebec Dam Company. The corporation was authorized "to raise their dam to a height to enable them to obtain a sufficient head of water to drive logs and run the mills on

Sebec river," and to demand and receive tolls on logs driven through the dam. Ch. 130, Priv. and Sp. Laws of 1866. We assume the charter was accepted and the dam increased in height. This act has been thrice amended. The first amendment, in point of time, simply reduced the tolls for driving logs (ch. 26, Priv. and Sp. Laws of 1899) and will not be hereafter referred to. The other amendments, enacted in the years 1903 and 1905, are devoted principally, if not wholly, to provisions restricting or regulating the use of the water held by the dam of defendant. They will be considered later.

Of the complainants, one, Milo Electric Light and Power Co., is the owner of a dam across Sebec river some distance below defendant's dam and engaged in the generation of electricity for light, heat and power. Some months before the bringing of the bill of complaint it entered into a contract to pump the water required for the plant providing the town of Milo with water. The third complainant, Boston Excelsior Co., is the owner of a dam below Sebec dam and a mill at Milo Village which it employs in the manufacture of excelsior. The other complainant, the American Thread Company, has a saw mill at Milo Village upon the river upon the water of which it depends for the floating of logs as required in its mill. In their bill, they allege that they are entitled to sufficient water, the first and third complainants to run their mills, and the other, to float its logs as required; that in the fall of 1910 the water was insufficient for their respective purposes; that they made demand upon defendant for sufficient water; that the demand was refused; that thereupon they opened the gates in Sebec dam which defendant closed; that the gates were again opened and that the agents of the complainants who opened the gates were subjected to arrest at the instance of defendant to the great loss and expense of complainants. They pray, first, that defendant be ordered and decreed to hoist its gates in its dam to the extent required by its charter to allow the escape of sufficient water whenever necessary for the purposes of manufacturing, including power purposes on the several privileges on Sebec river below Sebec dam and, second, that defendant be enjoined from closing its gates when water is necessary for the purposes set out in the first prayer for relief. The answer is a substantial denial of all the important allegations of the bill and a claim that complainants are entitled only to the natural

flow of the river, which it alleges they have enjoyed, or, if held to be entitled under the amendment of 1905 to more than the natural flow, the amendment is unconstitutional and therefore void. The case is here upon report.

As we have seen, the original charter of 1866 authorized the corporation to raise its dam to a height to enable it to obtain a sufficient head of water on Sebec pond to drive logs and run the mills on said Sebec river.

The act of 1903 restricts the defendant from July first to October fifteenth of each year from drawing the water below one foot from the bottom of the flood gates in the dam then existing, except the use of the water for manufacturing and other purposes for which power may be used on said dam and for creating power for the same and manufacturing on Sebec river, and the proper repair of the dam. This is coupled with a provision for seasonable notice to each cottage owner, mill owner and steamboat owner and hotel keeper on Sebec Lake and to the proprietors of the hotels on Sebec lake and Sebec village before making repairs.

The amendment of 1903 further provides that "Any person injured by any violation of the provisions of this charter shall have a remedy by injunction and by an action for damages." C. 141, Priv. and Spec. Laws of 1903.

In 1905 the act of 1866, as amended by the act of 1903 (c. 141, Priv. and Spec. Laws, 1903), was further amended by adding the following sections:

Section 7. All gates of said dam shall be kept tightly closed from the first day of March to the first day of July in each year. And during said period of time, from the first day of March to the first day of July in each year, none of said gates shall be hoisted except when necessary for log driving and manufacturing purposes on Sebec river as specified in said Chapter and amendments, but whenever during the period aforesaid the waters of Sebec Lake shall be needed for said purposes or at any time for manufacturing including power purposes on the several privileges of Sebec river, said gates shall be hoisted to the extent required to allow the escape of sufficient water therefor.

Section 8. The County Commissioners of Piscataquis County on petition of any person having property rights affected, or which

may be affected, under the provisions of the foregoing section, may appoint a resident of said county an agent who shall have the management of the gates of the Sebec Dam Company for such time as said commissioners may determine . . . c. 339, § 1, Priv. and Special Laws of 1905.

The defendant urges that the use of water by American Thread Company for the purpose of floating logs to its mill is not within the original act or its amendments. We are of the opinion that it is not. We think none of the amendments enlarges the purpose of the act of 1866 to afford water to run the mills which we must hold to mean to provide water for the turning of the machinery of the mills.

Under the amendment of 1905, is sufficient water simply the natural flow of the river as contended by defendant? We think not. The original act of 1866 authorized the raising of the dam to a height to enable the corporation to obtain a sufficient head of water to drive logs and run the mills on Sebec river. The word head was used in the sense of reserve and the authority granted was to make and maintain a reservoir of water sufficient to drive logs and run the mills. The inference is that the existing dam was inadequate and that the increase in the height of the dam was to provide stored waters for the purposes mentioned and consequently enable those in management of the gates of the dam to vent at times, when needed, more than the natural flow. Nor do we think "the mills on Sebec river" referred alone to those upon dam of defendant but to those upon the privileges on the river below the dam as well and not only to the mills then on the privileges below the dam but to such mills as might, in the development of industries, be located on those privileges, provided that the requirement for power be not in excess of the ability of the river to furnish when managed reasonably in the usual manner, or in accordance with rights acquired by prescription, if such exist. *Gould* v. *Boston Duck Co.,* 13 Gray, 442, 450, 452; *Keeney etc. Co.* v. *Union Mfg. Co.,* 39 Conn., 577; *Lockwood* v. *Lawrence,* 77 Maine, 297, 316; *Barrett* v. *Parsons,* 10 Cush., 367, 372; *Springfield* v. *Harris,* 4 Allen, 494, 496.

But the privileges below cannot require sufficient water in the broad meaning of the term. It is evident from the provisions of

Section 8 of the amendment of 1905 that the Legislature used the term "sufficient water" in a modified sense and in the sense of sufficient water regarding the rights of other interested persons "having property rights affected or which may be affected." The mills upon the dam, when in operation, are by the terms of the act entitled to sufficient water as well as the privileges below.

Moreover, the act of 1866, as we have seen made provision for water to run the mills on Sebec river by raising the height of the dam. The waters thus stored were to be available for the purposes mentioned. Even if the Legislature repealed the act of 1866, the result would be a reduction of the dam to its former height with the right of the mills upon the river below the dam to its natural flow.

Nor can we believe that it was the intention of the Legislature in the enactments under consideration to require the venting of sufficient water at any time without regard to the duty which defendant owed the public of driving logs seeking a passage down the river.

Defendant contends that the act of 1905 with the construction we have given it, is unconstitutional. Again we are unable to assent. Under the construction we have given to the various acts of the Legislature under consideration, no vested rights are impaired by the act of 1905. The act is but a regulation on the part of the Legislature of the use of the waters, provision for the storage of which was made by the act of 1866, for the purposes indicated by that act. This it had power to do by virtue of the provisions of § 2 of c. 47, R. S., reserving to the Legislature the power of amendment, alteration or repeal of acts of incorporation. As construed, we must hold the alterations made by the Legislature in the charter of defendant are not unreasonable, nor made in bad faith nor inconsistent with the object and scope of the act of incorporation; Sinking Fund Cases, 99 U. S., 700, 721. See also *Bienville Wat. Sup. Co.* v. Mobile, 186 U. S., 212, 222-223.

A decree may be entered and an injunction granted by the sitting Justice in accordance with this opinion, the injunction to be granted upon a renewed motion therefor and hearing thereon. The bill is dismissed as to complainant, American Thread Company.

*So ordered.*